UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

KATHRYN  HANNA,

                        Plaintiff,

v.                                                         Case No.  5:06-cv-300-Oc-GRJ

MICHAEL J. ASTRUE,[1] Commissioner of
Social Security,

                        Defendant.

_____/

## ORDER

Plaintiff appeals to this Court from a final decision of the Commissioner of Social

Security (the "Commissioner") denying her application for a period of disability, disability

insurance benefits, and Supplemental Security Income benefits. (Doc. 1.) The

Commissioner has answered (Doc. 11) and both parties have filed briefs outlining their

respective positions.  (Docs. 14 & 15.)  For the reasons discussed below, the

Commissioner's decision is due to be **AFFIRMED.**

## I. PROCEDURAL HISTORY

On November 19, 2003, Plaintiff protectively filed applications for disability

insurance benefits and supplemental security income benefits, claiming a disability

onset date of October 24, 2002. (R. 60-62.)  Plaintiff's application was denied initially (R.

39-41), and upon reconsideration. (R. 36-37.)  Thereafter, Plaintiff timely pursued her

---

[1] On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue should be substituted, therefore, for Commissioner Jo Anne B. Barnhart as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

administrative remedies available before the Commissioner, and requested a hearing before an Administrative Law Judge ("ALJ").  (R. 35.)  The ALJ conducted an administrative hearing on December 4, 2005 (R. 346-372), and issued a decision unfavorable to Plaintiff on March 13, 2006. (R.11-23.)  The Appeals Council denied Plaintiff's request for review on June 30, 2006. (R. 7-10.)  On August 21, 2006, Plaintiff filed the instant appeal to this Court. (Doc. 1.)

## II.  STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence.[2] Substantial evidence is more than a scintilla, i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.[3]

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.[4] The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.[5] However, the

---

[2] See 42 U.S.C. § 405(g).

[3] Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)); accord, Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

[4] Edwards, 937 F.2d at 584 n.3; Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).

[5] Foote, 67 F.3d at 1560; accord, Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding that the court must scrutinize the entire record to determine reasonableness of factual findings); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (finding that the court also must consider evidence detracting from
(continued...)

2

district court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law.[6]   The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death, or has lasted or can be expected to last for a continuous period of not less than twelve months.[7]  The impairment must be severe, making Plaintiff unable to do her previous work, or any other substantial gainful activity which exists in the national economy.[8]

The ALJ must follow five steps in evaluating a claim of disability.[9]  First, if a claimant is working at a substantial gainful activity, she is not disabled.[10] Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled.[11] Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is

---

[5](...continued)
evidence on which the Commissioner relied).

[6] Keeton v. Dep't Health and Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994).

[7] 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505.

[8] 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

[9] 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991).

[10] 20 C.F.R. § 404.1520(b).

[11] 20 C.F.R. § 404.1520(c).

disabled.[12] Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled.[13] Fifth, if a claimant's impairments (considering her RFC, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled.[14]

The burden of proof regarding the plaintiff's inability to perform past relevant work initially lies with the plaintiff.[15] The burden then temporarily shifts to the Commissioner to demonstrate that "other work" which the claimant can perform currently exists in the national economy.[16] The Commissioner may satisfy this burden by pointing to the grids for a conclusive determination that a claimant is disabled or not disabled.[17]

However, the ALJ should not exclusively rely on the grids when the claimant has a non-exertional impairment which significantly limits his or her basic work skills or when the claimant cannot perform a full range of employment at the appropriate level of

---

[12] 20 C.F.R. § 404.1520(d).

[13] 20 C.F.R. § 404.1520(e).

[14] 20 C.F.R. § 404.1520(f).

[15] Walker v. Bowen, 826 F.2d 996, 1002 (11th Cir. 1987). See also Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001).

[16] Doughty at 1278 n.2 ("In practice, the burden temporarily shifts at step five to the Commissioner. The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform. In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists. The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations.") (internal citations omitted).

[17] Walker at 1002 ("[T]he grids may come into play once the burden has shifted to the Commissioner to show that the claimant can perform other work.")

exertion.[18] In a situation where both exertional and non-exertional impairments are found, the ALJ is obligated to make specific findings as to whether they preclude a wide range of employment.[19]

The ALJ may use the grids as a framework to evaluate vocational factors so long as he introduces independent evidence of the existence of jobs in the national economy that the claimant can perform.[20] Such independent evidence may be introduced by a vocational expert's testimony, but this is not the exclusive means of introducing such evidence.[21] Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he or she is not capable of performing the "other work" as set forth by the Commissioner.[22]

### III. <u>SUMMARY OF THE EVIDENCE</u>

Plaintiff was born on May 19, 1961 and was forty-four (44) years old at the time of the hearing decision. (R. 349.) Plaintiff completed high school (R. 350) and has past relevant work history as a bartender, clerk, paralegal and legal secretary. (R. 83, 92-99, 350.) Plaintiff contends that she has been unable to work since October 24, 2002, due to hypothyroidism and degenerative disc disease. (R. 60.)

---

[18] <u>Phillips v. Barnhart</u>, 357 F. 3d 1232, 1243 (11th Cir. 2004); <u>Wolfe v. Chater</u>, 86 F.3d 1072, 1077 (11th Cir. 1996); <u>Jones v. Apfel</u>, 190 F.3d 1224, 1229 (11th Cir. 1999); <u>Walker</u> at 1003 ("the grids may be used only when each variable on the appropriate grid accurately describes the claimant's situation").

[19] <u>Walker</u> at 1003.

[20] <u>Wolfe</u> at 1077-78.

[21] <u>See</u> <u>id</u>.

[22] <u>See</u> <u>Doughty</u> at 1278 n.2.

The relevant portion of the medical evidence commences with clinical notes from Ocala Family Practice. While there is very little clinical information or laboratory studies in the record from this source, the notes state that Plaintiff was treated for hypothyroidism, for which she was taking Synthroid, anxiety, complaints of fatigue, lower back pain and GERD. (R. 182-223.)

Plaintiff was admitted to Munroe Regional Medical Center ("Monroe") on July 15, 2000 for injuries sustained during a motor vehicle accident. (R. 158.) Plaintiff reported that she struck the windshield with her head and the steering wheel with her chest. Plaintiff complained of headache, mild neck pain, low back pain and upper chest pain. Plaintiff was diagnosed with acute contusion of the head, acute contusion of the chest, and acute paraspinal strain.

On November 27, 2002, Plaintiff presented to Uday Mishra, M.D. at Munroe Regional Medical Center with complaints of vaginal discharge, beginning with nausea, vomiting, lower abdominal pain and tenderness of the lower abdomen. (R. 167-169.) Dr. Mishra stated that Plaintiff's symptoms were consistent with pelvic inflammatory disease. Plaintiff reported a history of hypothyroidism, chronic left hip and lower back pain with a work related injury. Plaintiff received intravenous hydration, she was prescribed antibiotics and was referred for an ob/gyn consultation.

Plaintiff was examined by Oregon K. Hunter, M.D. on May 15, 2003, after she reportedly tripped at work, hurting her ankle, lower back, left hip, shin and neck.  (R. 299.) Dr. Hunter found that Plaintiff's mood and affect were normal and that she was oriented in all three spheres. Plaintiff had normal strength in all four extremities, with the exception of her left elbow, which was 3+/5, and her left leg, which was at 4/5. Dr.

6

Hunter diagnosed Plaintiff with cervical strain, lumbosacral strain involving the left sacroilliac joint region and left ankle sprain. Dr. Hunter noted that an "emotional component may be developing." (R. 297.)

Plaintiff continued to report neck pain and pain her upper and lower back from June, 2003 (R. 294) through September, 2003. Throughout this time, Dr. Hunter noted that Plaintiff was in no acute distress. (R. 293.)

Records from the Advanced Imaging Center establish that Plaintiff was suffering from degenerative disc disease. (R. 306-304.) An MRI of the lumbosacral spine performed on October 21, 2003 revealed advanced degenerative disc disease at L4-L5 and L5-S1 associated with spondylolisthesis; a disc protrusion at L5-S1; and mild bilateral neural foraminal narrowing at L5-S1.  An MRI of the cervical spine revealed bulging and foraminal narrowing at C4-5 and mild to moderate stenosis at C5-6 and C6-7 associated with foraminal narrowing, disc protrusions, and osteophytosis.

At Plaintiff's November 5, 2003 visit with Dr. Hunter, she reported continued neck and back pain that radiated into all four extremities, as well as numbness in both upper extremities and weakness in her legs. Electrodiagnostic and nerve conduction studies showed no evidence of cervical or lumbosacral radiculopathy and Plaintiff's nerve motor and sensory studies were all normal. (R. 287.)

Dr. Hunter's notes from his January 6, 2004 examination of Plaintiff reveal that Plaintiff's medication helped her with pain and function. Plaintiff had rigidity of the back and neck, with restricted motion and she walked "without an assistive device." (R. 285.) Dr. Hunter recommended continued "conservative treatment."

The medical notes from Plaintiff's February 2, 2004 visit with Dr. Hunter reveal that Plaintiff had severely restricted motion of the cervical greater than lumbar spine, but had full passive range of motion of the left ankle. Plaintiff reported continued pain in her back, neck and all four extremities. Plaintiff also stated to Dr. Hunter that she was hoping "to be retrained or apply for Social Security Disability." (R. 283.)

As of March 1, 2004, Dr. Hunter opined that Plaintiff had reached maximum medical improvement. Plaintiff had a Permanent Impairment Rating of 7% for her lumbar spine and 6% for the cervical spine, which is a combined total of 13% impairment of the whole person as a result of her automobile accident. (R. 282.) Dr. Hunter noted that Plaintiff had post traumatic stress disorder and recommended that she get psychological evaluation due to pain. Her activity status, per Dr. Hunter, was "sedentary; light." Dr. Hunter also noted that Plaintiff's medications helped with her pain and function.

Plaintiff reported to Dr. Hunter at her August 10, 2004 visit that she was unable to return to employment, due to pain and dysfunction. Dr. Hunter noted no focal weakness in the upper or lower extremities and noted that Plaintiff did not need to see him again for six months. (R. 279-280.)

Dr. Hunter's assessment of Plaintiff's condition remained the same as the most recent progress note, dated February 14, 2005. (R. 275.) Dr. Hunter noted that Plaintiff continued to report pain in the neck and back that radiated into her upper extremities; however, Plaintiff reported that the pain "is well controlled with medication." Dr. Hunter noted restricted range of motion of the cervical spine; however, there was no weakness noted in the upper or lower extremities.

Donald W. Morford, M.D., a non-examining state agency physician, completed a Physical Residual Functional Capacity Assessment on Plaintiff on June 21, 2004. (R. 267-274.) Dr. Morford found that Plaintiff can lift 20 pounds occasionally and 10 pounds frequently; can stand and/or walk about 6 hours in an 8-hour workday; sit about 6 hours in an 8-hour workday; and is unlimited in her ability to push and/or pull. Dr. Morford found that Plaintiff has no postural limitations and can occasionally climb, balance, stoop, kneel, crouch and crawl.

Non-examining state agency psychiatrists, Drs. Vergara and Alvarez-Mullin completed Psychiatric Review Techniques on Plaintiff on March 1, 2004, and June 11, 2004, respectively. Both physicians concluded that Plaintiff suffers from coexisting nonmental impairments and a somatoform disorder. (R. 233-239, 255-266.) Drs. Vergara and Alvarez-Mullin's opinions were also consistent in finding that Plaintiff had only mild restrictions with regard to activities of daily living and maintaining concentration, persistence, or pace; no limitations in maintaining social functioning; and no history of episodes of decompensation of extended duration. Dr. Vergara noted that Plaintiff prepares daily meals, is able to shop for necessary items, takes care of her personal needs/hygiene, visits with friends, and gets along well with others. (R. 245.) Both physicians concluded that Plaintiff has a chronic pain disorder and that her mental condition was not severe.

## IV.  DISCUSSION

Plaintiff's raises two arguments in opposition to the Commissioner's decision. First, Plaintiff argues that the ALJ violated the Eleventh Circuit pain standard by rejecting her subjective allegations of disabling pain and limitations with no evidentiary

basis for doing so. Second, Plaintiff argues that the ALJ erred by failing to find that Plaintiff suffers from a severe mental impairment.

The law concerning the analysis of subjective complaints of pain is well settled. In evaluating disability, the ALJ must consider all of a claimant's impairments, including his subjective symptoms, such as pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence.[23]  The Eleventh Circuit has set forth a three-part test for determining when a disability may be established based on subjective complaints of pain.[24]  The "pain standard" requires that the plaintiff first produce medical or other evidence of an underlying medical condition.  Then the plaintiff must demonstrate either that objective medical evidence confirms the severity of the alleged pain arising from that condition or that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.[25]  "Pain alone can be disabling, even when its existence is unsupported by objective evidence."[26]  However, a claimant's subjective complaints of pain do not conclusively establish a disability unless accompanied by medical evidence.[27]

---

[23] 20 C.F.R. § 404.1528.

[24] Landry v. Heckler, 782 F.2d 1551, 1553 (11th Cir. 1986).

[25] Id.

[26] Walker v. Bowen, 826 F.2d 996, 1003 (11th Cir. 1987).

[27] 42 U.S.C. § 423(d)(5)(A) ("An individual's statement as to pain or other symptoms *shall not alone be conclusive evidence of disability* as defined in this section; there *must* be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged and

(continued...)

If an ALJ decides not to credit a claimant's testimony about subjective complaints, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding.[28]  A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record.[29]

In the instant case, the ALJ applied the Eleventh Circuit's pain standard "threshold"[30] assessment to Plaintiff's subjective complaints by noting that Plaintiff presented objective medical evidence that established that hypothyroidism and degenerative disc disease of the cervical and lumbar spine were medical impairments. (R. 21.) Once Plaintiff met this initial burden, however, the ALJ found Plaintiff's complaints regarding her level of pain and inability to work were not wholly credible.

In making this finding, the ALJ articulated no less than seven reasons for finding that Plaintiff's claims were not fully credible including: claimant's own description of her activities and lifestyle, the degree of medical treatment required, discrepancies between the claimant's assertions and information contained in the documentary reports, the reports of the treating and examining practitioners, the medical history, the findings

---

(...continued)
which, when considered with all evidence required to be furnished under this paragraph (including statements of the individual or his physician as to the intensity and persistence of such pain or other symptoms which may reasonably be accepted as consistent with the medical signs and findings), would lead to a conclusion that the individual is under a disability") (emphasis added).

[28] Foote, 67 F.3d at 1561-62; Jones v. Department of Health and Human Servs., 941 F.2d 1529, 1532 (11th Cir. 1991) (finding that articulated reasons must be based on substantial evidence).

[29] Hale v. Bowen, 831 F.2d 1007, 1012 (11th Cir. 1987); MacGregor v. Bowen, 786 F.2d 1050, 1054 (11th Cir. 1986).

[30] Marbury, 957 F.2d at 839.

made on examination, and claimant's assertions concerning her ability to work.[31] All of these reasons are supported by substantial evidence in the record.

The ALJ conducted a thorough examination of Plaintiff's medical history, including Plaintiff's complaints of pain. The ALJ noted and properly recognized that Plaintiff complained of "musculoskeletal pains affecting the neck, back and upper extremities,"[32] that Plaintiff used "Lortab,"[33] and that Plaintiff had been "definitively diagnosed as having degenerative disc disease via radiological studies."[34]

In accordance with the pain standard, the ALJ in this case articulated the reasons for discounting Plaintiff's complaints of pain. The ALJ specifically found that "the pain was well controlled with medication," and that Dr. Hunter opined that Ms. Hanna was capable of sedentary or light activity."[35] The ALJ also found that as of August 26, 2005, Plaintiff "did not require an assistive device to walk," had only "mild rigidity of the neck and back; moderately restricted range of motion of the cervical and lumbar spine; tenderness of the left ankle; normal mood, affect, speech and cognition; normal deep tendon reflexes in all extremities; and 4/5 strength of all extremities."[36]  Furthermore, the ALJ noted that the record did not evidence that Plaintiff needed imminent surgery or that

---

[31] R. 20.

[32] R. 17.

[33] Id.

[34] Id.

[35] Id.

[36] Id.

surgery had ever been recommended,[37] which suggests that the pain was not severe enough to require surgery.

In addition, the ALJ found that the opinions of the state agency physicians (who (found that Plaintiff could perform light work) were not entitled to great weight because they did not have the benefit of reviewing subsequent medical evidence or testimony. The ALJ stated that a residual functional capacity for sedentary work "more fairly reflects the claimant's physical ability to work and gives her the benefit of the doubt concerning the extent of her work-related symptoms and limitations."[38]

Lastly, the ALJ in his analysis properly noted that the Plaintiff's activities of daily living, including taking care of her personal hygiene, performing household chores, watching movies on television and shopping, were inconsistent with her claims of disabling symptoms and limitations.[39]  While the Plaintiff's activities of daily living are not conclusive evidence that she was not disabled during the relevant period of time, these activities are, nonetheless, consistent with the ability to perform sedentary work.

Accordingly, the Court concludes that the ALJ followed the Eleventh Circuit pain standard in analyzing whether the Plaintiff's subjective complaints were credible. The ALJ articulated specific reasons for rejecting Plaintiff's testimony that she had disabling symptoms or limitations, which reasons were based upon the medical evidence and other substantial evidence of record. Where, as here, an ALJ has made a clearly

---

[37] R. 20.

[38] R. 19.

[39] R. 20.

articulated credibility finding based upon substantial supporting evidence in the record, a reviewing court should not disturb the findings by the ALJ.

Turning to Plaintiff's second argument, Plaintiff contends that the ALJ erred by finding that Plaintiff did not have a severe mental impairment, as evidenced by the fact that Plaintiff was taking Valium for anxiety and depression and was receiving treatment from an outreach counselor at Rape Crisis/Domestic Violence Creative Services since December 8, 2005. Plaintiff contends that because Plaintiff's mental impairments were severe the ALJ erred by relying exclusively on the grids and by not using a vocational expert during the hearing.

According to SSR 96-9p, a substantial loss of ability to meet any one of several basic work-related activities on a sustained basis, will substantially erode the unskilled sedentary occupational base and would justify a finding of disability. A less than substantial loss of ability to perform any of the following work-related activities may or may not significantly erode the unskilled sedentary occupational base: understanding, remembering, and carrying out simple instructions; making judgments that are commensurate with the functions of unskilled work – i.e. simple work-related decisions; responding appropriately to supervision; and dealing with changes in a routine work setting. SSR 96-9 states that "[w]hen an individual has been found to have a limited ability in one or more of these basic work activities, it may be useful to consult a vocational resource."[40]

---

[40] SS 96-9p

Because the ALJ found that Plaintiff could not return to her past relevant work, the burden of proof shifted to the Commissioner to establish that the claimant could perform other work that exists in the national economy.[41]  It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy.[42]  Exclusive reliance on the "grids" is not appropriate "*either* when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has non-exertional impairments that significantly limit basic work skills."[43]  If either condition exists, the ALJ is required to consult a vocational expert.[44]

In the instant case it was appropriate for the ALJ to rely upon the Grids rather than utilizing a vocational expert because the ALJ articulated sufficient reasons supported by the evidence in the record why Plaintiff's mental impairments would not adversely impact her ability to do sedentary work.

The ALJ provided a detailed analysis of Plaintiff's mental health history, including the fact that Plaintiff "exhibited mild pain behaviors" in September, 2003, and that neither state agency physician concluded that Plaintiff had any severe mental impairments that had more than a minimal affect on her ability to work. The ALJ stated

---

[41] See Foote v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995).

[42] See id.

[43] See Phillips v. Barnhart, 357 F.3d 1232, 1242 (11th Cir. 2004)(quoting Francis v. Heckler, 749 F.2d 2565, 1566 (11th Cir. 1985.)

[44] See id.

that he gave great weight to the opinions of the state agency physicians because they were "well-supported." The ALJ noted that both state agency physicians found that Plaintiff had no more than mild impairments in her ability to perform activities of daily living; no difficulties in maintaining social functioning; mild difficulties in maintaining concentration, persistence, and pace; and no episodes of decompensation of extended duration.[45]  While Plaintiff points to a letter from an outreach counselor, the letter does not provide any information regarding the type of sessions Plaintiff attended, nor does it comment on Plaintiff's mental health status. Therefore, even putting aside the fact that a letter from a counselor or a therapist is not an acceptable medical source[46] the letter simply does not constitute substantial evidence to support Plaintiff's claim of a severe mental impairment.

The ALJ also noted that although Plaintiff was prescribed Valium for anxiety, the record "does not reveal that she required ongoing mental health treatment for anxiety or depression since the alleged disability onset date."[47] The  ALJ pointed out that other than the medication prescribed by a general/family practitioner, Plaintiff "has apparently not received any mental health treatment from a mental health specialist," and she "has not required psychiatric hospitalization."[48]

Finally, the ALJ noted that no treating physician had credibly suggested that Plaintiff's mental impairments prevent her from sustaining sedentary work, and that to

---

[45] R. 18.

[46] *See,* 20 C.F.R. §§ 404.1513 and 416.913.

[47] R. 20.

[48] Id.

the contrary, "a treating physician has noted that she is capable of light or sedentary activities."[49] Accordingly, for these reasons, the ALJ did not err in his analysis of Plaintiff's mental impairments and did not err in concluding that Plaintiff's depression does not limit her ability to work.

For these reasons, the Court concludes that the ALJ's finding - that Plaintiff did not have any nonexertional impairments that would significantly erode the sedentary occupational base - is supported by substantial evidence. Accordingly, the ALJ was entitled to rely upon the Grids in determining whether Plaintiff was disabled and he was not required to utilize the testimony of a vocational expert.

## V.  CONCLUSION

In view of the foregoing, it is hereby **ORDERED** that the decision of the Commissioner is **AFFIRMED**. The Clerk is directed to enter judgment accordingly and close the file.

**IT IS SO ORDERED.**

**DONE AND ORDERED** in Ocala, Florida, on September 24, 2007.

_____
GARY R. JONES
United States Magistrate Judge

Copies to:
    All Counsel

---

[49] Id.

17